WILLIAM I. THORN, Respondent, *v.* OLIVER T. BEARD,
Appellant.

(Argued October 6, 1892; decided October 18, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the second judicial department, entered upon an order
made May 13, 1891, which affirmed a judgment in favor
of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material,
are stated in the opinion which is given in full:

" This action was brought by an attorney to recover for serv-
ices rendered to his client.    They covered a period extending
from September, 1887, to March or April of 1889.    During
that time a suit was brought for the construction of the will of
William Beard, in which the interest of the defendant was
quite seriously involved, and a proceeding was instituted for
the settlement of the accounts of the executors named in that
will.    In each of those litigations, the defendant was repre-
sented by counsel other than Thorn, and the latter participated
in the character of guardian *ad litem* for certain of the infant
children of the defendant, whose interests under the will were
certainly adverse to those of their father.    He was seeking to
divert income to himself, which otherwise would accumulate
for the benefit of the children as remaindermen.    During the
progress of these litigations, there was much of consultation
and conversation between the two parties about the will and
its construction, and the action and accounts of the executors.
Upon the entry of final judgment in the equity suit, an allow-
ance was made to Thorn, as guardian of $500.    He took the
money, but was discontented with its amount, and presented a
bill for $7,000 against the defendant, for $5,000 of which he
had presented a sworn claim to the court as due to him in the
capacity of guardian.    The defendant refusing to pay, this
action was brought.    The courts have held that Thorn's posi-
tion as guardian for the infants was inconsistent with any action
as counsel for the defendant in the then existing litigations,
and refused to permit a recovery for the services claimed to
have been rendered, and that determination was so clearly
correct as scarcely to require discussion.

"But beyond what was involved in the equity suit and the accounting before the surrogate, there seem to have been two questions raised by the defendant which were important to him, and as to which the interest of his children was identical with his own. These were whether the executors under the will were entitled to commissions, not only as such, but also as trustees under the trust provisions of that instrument; and whether a bill of sale for a dredge plant executed for a nominal consideration by the testator to one of his sons could be set aside. A successful result of these inquiries would have necessarily added large sums to the estate, and benefited alike the defendant and his children. Thorn claimed to have rendered services in those directions upon the request of the defendant and has recovered a judgment therefor, which is assailed on this appeal, but I am unable to see how it can be sustained.

"The two subjects came up while the litigations over the will were in progress. Thorn testifies that he told defendant that neither question was involved in, or could be determined by, the suit for construction of the will, or the accounting of the personal estate which were in progress; that defendant's remedy would be by an action thereafter to be commenced to remove the executor who held the bill of sale, and restore the subject-matter of it to the estate; but that he, Thorn, would not enter upon that litigation unless he could entirely control it. I quote his testimony: 'I said, we will go through this matter, but when we come to the suit for the accounting, and for the discharging of the trustees, I am going to do the business in my own name and in my own way, or I won't do it; you have put me to a great deal of trouble here; you are tenacious; I will run your litigation, or you will run it. Well, he says, I engage you now to run that litigation, do you hear?' 'Yes; in my name?' 'Yes.' Well, I have fished behind the net long enough, and I cannot handle myself, and I intend to be where I can protect myself fully, and I want you to talk a great deal less, if you will, colonel, and let me have my own way a good deal more or less; I want you to let me alone; Mr. N. B. Haight was present when that conversation occurred, and the thing was discussed thereafter, and it was understood

that just as soon as we got the judgment perfected and matters straight in this construction suit that that matter, then fully discussed, was to be started in action, Oliver T. Beard against the balance.   Q. Were you posted and prepared to commence that action and carry it through?   A. I think I was as we understand; I knew all about it, and I knew how to commence it except in details.   Q. After the completion of that other suit fixing as to income that suit was not commenced?   A. We split.'   He testified again that when the subject of the bill of sale to defendant's brother came up in a discussion over the accounting he told the defendant ' to let it alone and it would all come up in the big suit.'   It seems to me to be the just result of the testimony that, while Thorn was acting as guardian *ad litem* for the infants he was also more or less advising defendant in directions hostile to their interests; that in the course of those discussions the double commissions which might or might not be charged and the bill of sale were talked about; that those matters were incidental and came up at first before the relation of attorney and client was established between Thorn and defendant; that it was not to be established until after the existing litigations were out of the way and Thorn left unhampered by his position as guardian *ad litem;* that he refused to be employed in his existing situation, and only on condition that he could act in his own name and in his own way; and that the only employment by defendant to which he anywhere testified was a retainer to bring an independent suit after the close of the existing litigations.   Now that suit he never brought.   He did not enter upon the stipulated employment.   He never even offered to bring it or tendered his services for that purpose.   On the contrary he presented an unjust bill, and then sued upon it, making impossible the future relation contemplated.   In other words, he neither performed, nor offered to perform, the contract of employment to which he testified, but put himself in an attitude toward the defendant which would have justified the latter in refusing his services if he had tendered them. And beyond that I can discover no evidence that Thorn did any labor or performed any work after the contract of employment, and by reason of that engagement in the way of prepara-

tion for the future suit contemplated. What he says about the double commissions is this : ' Whether they had a right to single or double commissions was the serious question that he made; I had none. Q. That question never, as matter of fact, arose at all? A. Never as yet, because he did not bring that suit.' And he says elsewhere that he stopped the defendant's discussion of the subject, saying he knew all about it and was devoting time to it in another very important case. I cannot find that he ever advised the defendant one way or the other upon the question, but kept his knowledge and opinion to himself, evidently intending to wait until the question in some way arose, although apparently it did arise and was decided in the accounting before the surrogate, and so came within the duties of the guardian. So far as the bill of sale is concerned he seems to have done nothing and had not investigated the details. It seems to me to be beyond dispute that he neither did the service he was employed to do or made any special preparation for its performance. The question was fairly raised on the trial by a motion for a nonsuit and by an exception to so much of the charge as related to the bill of sale of the dredge plant. We think the nonsuit should have been granted.

" The judgment should be reversed and a new trial granted, costs to abide the event."

*Oliver T. Beard* for appellant in person.

*Wood & Morschauser* for respondent.

FINCH, J., reads for reversal and new trial.
All concur.
Judgment reversed. _____